**Darcel L. BRIGHT et al., Plaintiffs-Appellants,**

v.

**Donald I. ISENBARGER et al., Defendants-Appellees.**

**No. 18742.**

United States Court of Appeals, Seventh Circuit.

July 13, 1971.

Rehearing Denied July 29, 1971.

---

Ivan E. Bodensteiner, Fort Wayne, Ind., for plaintiffs-appellants.

Jerome J. O'Dowd, Jerome B. Van Orman, Fort Wayne, Ind., for defendants-appellees.

Before KILEY, CUMMINGS and STEVENS, Circuit Judges.

PER CURIAM.

Purportedly without adequate notice or hearing, plaintiffs were expelled as sophomores at Central Catholic High School in Fort Wayne, Indiana. Count I of their complaint was based on Section 1983 of the Civil Rights Act (42 U.S.C. § 1983), and Count II alleged that they were deprived of a property right, arising out of the paying of their tuition, without due process of law. The district court held that the Fourteenth Amendment does not apply to the internal operations of this parochial school and therefore dismissed the action. In affirming, we adopt Judge Eschbach's fine opinion (314 F.Supp. 1382) and have little to add thereto.

Central Catholic High School had a rule requiring all students to be present from 8:15 a.m. to 3:10 p.m. on school days unless they were given permission to be absent. They were admonished that tardiness would result in suspension and probation, with expulsion resulting from another violation during probation. The students were warned that they must not be on the premises of a nearby public high school during their own regular school hours. Since the two plaintiffs were seen leaving the public school at 8:15 a.m. during a school day, they were suspended for a day and placed on probation on February 12, 1970. A few weeks thereafter, they again visited the public school during their own school hours, resulting in their expulsion for the balance of the school year.

The district court observed that only "state action" is within the prohibitions of the Fourteenth Amendment and held that the plaintiffs had failed to demonstrate the requisite governmental involvement. In so holding, the district court reasoned that the "state action" doctrine was developed in response to efforts to eliminate private racial discrimination. 314 F.Supp. at p. 1392. Accordingly, it thought that there might be a less demanding standard of what constitutes sufficient state involvement where there are allegations of racial discrimination.[1] 314 F.Supp. at p. 1394. We find it unnecessary to decide whether state action cases not involving attacks on racial discrimination require a more demanding standard of what constitutes sufficient state involvement. In this case the state played no role in defendants' expulsion of plaintiffs. Furthermore, as the district court pointed out, other more nebulous relationships between Indiana and this Catholic high school were insufficient to warrant attributing the expulsions of plaintiffs in any way to the actions of the state.

[1]. This view was also espoused in Judge Friendly's concurring opinion in Coleman v. Wagner College, 429 F.2d 1120, 1127 (2d Cir. 1970).

On this appeal, plaintiffs rely heavily on several cases that were decided after the release of the district court's opinion or not brought to its attention.[2] Their chief reliance appears to be on Seidenberg v. McSorleys' Old Ale House Inc., 308 F.Supp. 1253 (S.D.N.Y.1969). There the plaintiffs sought to enjoin the operators of a tavern from continuing its long-time practice of serving only men. The district court held that since a state license was required to operate the bar, there was sufficient state involvement to make the licensee's acts those of the state, and the discrimination against women was adjudged an impermissible classification under the equal protection clause of the Fourteenth Amendment. There the bar could not operate without a state license, whereas Central Catholic High School did not need a commission from Indiana, nor did Indiana exercise controls comparable to New York's control over McSorleys' Old Ale House. This school did choose to obtain a first-class commission from the Indiana Board of Education, but the Board had nothing to do with the school's disciplinary rules. To qualify for a commission, the school was merely required to meet certain curricular and training standards. However, it was not placed under the absolute control of the State board of education. On the other hand, as Judge Tenney pointed out, McSorleys' tavern was subject to such a "pervasive regulatory scheme"[3] that he concluded "ubiquitous and pervasive" state action was present (308 F. Supp. at 1257, 1259). In contrast, Indiana was not so significantly involved in the affairs of Central Catholic High School that these expulsions could justifiably be deemed state action.

Doe v. Hackler, 316 F.Supp. 1144 (D. N.H.1970), is plaintiffs' next post-opinion authority. However, Pinkerton Academy was a high school maintained by the school district of Derry, New Hampshire. It accepted state money as tuition payments. Consequently its dress code governing hair length might more reasonably be viewed as state action.

In Coleman v. Wagner College, 429 F. 2d 1120 (2d Cir. 1970), the majority opinion did not conclude that the expulsion of 24 black students from Wagner College was state action. The college had adopted public order rules and regulations required by a New York statute, and the expulsions were for a breach of those rules and regulations. The case was remanded to determine if the statute "represents a meaningful state intrusion into the disciplinary policies of private colleges and universities."[4] 429 F.2d at p. 1125. No such intrusion has been alleged here.

In Smith v. Young Men's Christian Ass'n of Montgomery, 316 F.Supp. 899, 908 (M.D.Ala.1970), the YMCA was enjoined from racial discrimination because its conduct was "'so entwined with governmental policies [and] so impregnated with governmental character as to become subject to the constitutional limitations placed upon state action'." On the other hand, Central Catholic High School's conduct lacked the essential characteristics of state action so carefully detailed in the *Smith* case.

Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), is also said to dictate reversal here. That case involved a landlord's seizure of her tenant's personal property under a Texas statute which gives the landlord a past due rent lien on the personal goods of the tenants that are in the rented premises and also gives the landlord authority to enforce the lien by

---

2. We express no opinion whether we would follow such cases if applicable.

3. This factor was also the basis for Irvis v. Scott, 318 F.Supp. 1246, 1248 (three-judge court M.D.Pa.1970), another liquor license case relied upon by plaintiffs.

4. The concurring opinion concluded that Wagner College was "exercising a power emanating from the [State] legislature" in promulgating the rules and regulations required by New York law (429 F.2d at p. 1126), but Central Catholic High School's rules and regulations had no statutory source.

peremptory seizure of the property. State action was found because

> " * * * the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the State. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the Sheriff or constable. Thus Article 5238a vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function." (Footnote omitted.) 430 F.2d at p. 439.

No Indiana statute authorized Central Catholic High School to expel these plaintiffs, so that *Hall* does not support state action here.

McQueen v. Druker, 317 F.Supp. 1122 (D.Mass.1970), was a suit complaining that defendants' threatened eviction of plaintiffs from the Castle Square project violated plaintiffs' rights under the due process clauses of the Fifth and Fourteenth Amendments. Relying on Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45, and Colon v. Tompkins Square Neighbors, 294 F.Supp. 134 (S.D.N.Y.1968), the court concluded:

> "With respect to Castle Square, the federal and state governments have elected to place their power, property, and privilege behind the landlords' authority over the tenants, and have insinuated themselves into a position of interdependence with the landlords. Whatever may be the situation of the landlords of Castle Square with respect to their labor relations or to any immunity from intergovernmental taxation, their actions in relation to their tenants cannot be considered to be so private as to fall without the scope of the First, Fifth and Fourteenth Amendments." 317 F.Supp. at 1128.

Since no such interdependence existed between Indiana and Central Catholic High School, this authority is also inapt.

The plaintiffs' final recent citation is to United States v. Brand Jewelers, Inc., 318 F.Supp. 1293 (S.D.N.Y.1970), where the Government sought to enjoin a jeweler's practice of obtaining default judgments against customers by having process servers fail to make proper service of process or prepare false affidavits of service. In holding that the Government had standing to sue to end widespread deprivations of property, Judge Frankel succinctly stated:

> "It seems not to be disputed—and the court holds in any event—that the alleged conduct here of those licensed to serve process, and to authenticate by official seal and notarial license that service has been duly and lawfully made, amounts to 'state action' in the relevant sense." 318 F.Supp. at p. 1299.

Unlike *Brand Jewelers,* this private high school did not depend upon a state license, nor did the defendants expel plaintiffs under state authorization.

In sum, even considering these and other authorities not made available to the district court, we are satisfied that its judgment was correct.

Affirmed.