John C. STOCK

v.

**TEXAS CATHOLIC INTERSCHOLASTIC LEAGUE et al.**

**Civ. A. No. 3–7577–B.**

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 17, 1973.

Robert E. Luna, Dallas, Tex., for plaintiff.

Thomas C. Unis, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendant Thomas Tschoepe.

William T. Burke, Jr., Dallas, Tex., for Catholic Interscholastic League, Leo Benavides and Eugene Gittinger.

## MEMORANDUM OPINION AND ORDER

HUGHES, District Judge.

Plaintiff John C. Stock through his complaint in the above styled and numbered cause seeks preliminary and permanent injunctive relief contending that defendants suspended him from playing football in violation of the due process guarantee of the Fourteenth Amendment. Having previously denied plaintiff's request for a temporary restraining order, this Court conducted a full evidentiary hearing on September 14, 1973. After careful review of the evidence presented at that hearing, evaluation of the pleadings and briefs submitted by counsel for all parties, and independent research, the Court believes it to be without jurisdiction in this cause and, therefore, dismisses this complaint without prejudice.

Plaintiff is a 17 year old male resident of Dallas County, Texas, currently enrolled as a senior in the Bishop Lynch High School (BLHS).

BLHS, a private school operated by the Catholic Diocese of Dallas, has voluntarily sought and received accreditation by the State Board of Education. As an accredited institution, graduates of BLHS are, in the eyes of the State, treated the same as graduates of public high schools.

As part of its program, BLHS maintains a football team that competes with other football teams from private schools in both "league" and "non-league" games. This football program is voluntary and is not required for accreditation.

BLHS is a member of the Texas Catholic Interscholastic League (TCIL) which is a league of private Catholic schools. Membership in this league is not required for accreditation by the State and is purely voluntary with some

Catholic schools participating as members and some not participating.

The TCIL has adopted a Constitution that sets forth the objectives of the league and the rules which member schools are to follow.

At the time the TCIL was formed, the State public schools that sponsored football teams were governed by the University Interscholastic League (UIL), a State agency that established the rules and regulations pertinent to public school athletic activities. The TCIL adopted the UIL rules and bylaws as its own. When changes occur in the UIL rules or bylaws, these changes are generally adopted by the TCIL. The adoption by TCIL of these rules and bylaws of the UIL was voluntary. *Plaintiff's Exhibit 1 and Defendant's Exhibit 3.*

In November, 1972, plaintiff was a participant in a football game between BLHS and Nolan High School. As a result of alleged misconduct during the game, the Fort Worth Football Officials Association recommended to the TCIL that plaintiff be ". . . prohibited from further participation in competive sports." *Defendant's Exhibit 1*

This recommendation, made in letter from the Secretary of the TCIL, was treated as a "complaint" and an investigation of the incident commenced.

Rev. D. A. Shanahan, O. P., Principal of BLHS, on behalf of the school and the plaintiff, prepared a response to the complaint and appeared before the Executive Committee of the TCIL on November 22, 1972.

On or about January 18, 1973, Rev. Shanahan received in the mail the decision of the TCIL Executive Board. In that decision, the Board terminated the eligibility of plaintiff to participate in TCIL activities and, also, prohibited BLHS from competing for district honors in football in 1973. Upon receiving this decision, Rev. Shanahan sent a letter to the parents of the plaintiff informing them of the Board's decision.

After filing a notice of appeal, Rev. Shanahan talked on the telephone with Wally Stock, an older brother of plaintiff, informing him that he was planning an appeal for both plaintiff and BLHS from the Board's decision. In that conversation, Rev. Shanahan outlined his points of appeal and told Mr. Stock that there was no need for either plaintiff or an attorney to be present. Rev. Shanahan appeared on February 16, 1973, at the appeal hearing in San Antonio.

As a result of that appeal, the original decision was modified on March 12, 1973, to permit plaintiff "to participate after January 1, 1974, in TCIL winter and spring activities", his participation to be contingent upon a recommendation by the principal and school counselor that plaintiff's "sense of fair play" had improved. *Plaintiff's Exhibit 4.*

On August 24, 1973, plaintiff filed his complaint in this cause contending a denial of due process in the suspension proceeding. Jurisdiction was alleged under 28 U.S.C. § 1343(3) due to the alleged deprivation of a Constitutional right under color of state law under 42 U.S.C. § 1983 (1970).

■ To recover under 42 U.S.C. § 1983 (1970), the plaintiff must establish two elements: (a) he must show that the defendants deprived him of a right secured by the "Constitution and laws" of the United States, and (b) he must show this denial occurred under color of state law. Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969).

In an attempt to show that defendants conduct occurred under color of state law, plaintiff alleges (a) that the TCIL adopted the rules and bylaws of the UIL, (b) that BLHS was an accredited high school, and (c) that the Texas legislature by a joint House-Senate resolution recommended to the UIL that TCIL member teams be permitted to play against UIL teams.

■ The voluntary adoption by a private organization of rules promulgated by a state agency for the operation of that state agency does not constitute ac-

tion under color of state law for purposes of 42 U.S.C. § 1983 (1970). The TCIL was under no compulsion to adopt the UIL rules and bylaws. That adoption was solely for the convenience of the founders of the TCIL. The UIL cannot enforce rules it promulgated that were adopted by the TCIL. The UIL cannot *compel* the TCIL to adopt amendments to the UIL rules, such adoption is voluntary. In short, there is no mandate, compulsion, or other obligation on the part of TCIL to adopt the UIL rules and such adoption is insufficient to support jurisdiction in this cause.

■ As to accreditation, this "link" between the state and BLHS is not connected with the challenged activity, i. e. the suspension from TCIL activities. As stated in *Adickes*, it is the challenged activity that must be performed under color of state law not a separate, non-challenged area of conduct. *See also* Bright v. Isenbarger, 314 F.Supp. 1382 (N.D.Ind.1970), aff'd per curiam, 445 F.2d 412 (7th Cir. 1972).

With respect to the legislative resolution, that resolution was only a recommendation to the UIL and does not carry the force of law or impose any legislative mandate. Moreover the recommendation of the Senate resolution has never been implemented. *Defendant's Exhibit 2.* Therefore, this too is insufficient to establish state action.

■ But even if the decision of TCIL to terminate plaintiff's participation in sports was under color of state law the involvement is too insignificant to justify jurisdiction in this cause. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1971). The Supreme Court held that the licensing of the Harrisburg Moose Lodge did not significantly affect the right of minority groups to purchase liquor or to obtain club licenses for themselves. In its opinion the Court declared, "where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discrimination'." 407 U.S. at 173, 92 S.Ct. at 1971 *citing* Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). *Also see* Gilmore v. City of Montgomery, 473 F.2d 832, 838–839 (5th Cir.) petition for cert. filed 41 U.S.L.W. 3630 (May 10, 1973) (No. 72–1517); Smith v. Young Men's Christian Association, 316 F.Supp. 899 (M.D.Ala.1970), aff'd as modified, 462 F.2d 634 (5th Cir. 1972).

The involvement of BLHS in state action is even less than that of TCIL. The only state action alleged is that BLHS holds a certificate of accreditation from the State of Texas. Its participation in the suspension of plaintiff was the result of following the mandate of TCIL, a private organization that BLHS had voluntarily joined. This relationship with the State is insufficient to make the suspension of plaintiff the action of the State. Bright v. Isenbarger, 314 F.Supp. 1382 (N.D.Ind.1970), aff'd per curiam, 445 F.2d 412 (7th Cir. 1971). *See, e. g.,* Powe v. Miles, 407 F.2d 73 (2d Cir. 1968); Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969); Blackburn v. Fisk University, 443 F.2d 121 (6th Cir. 1971).

In the alternative, even if there were sufficient state action to rule that defendants were acting under color of state, this Court holds that plaintiff was not denied any Constitutional right by the action of TCIL.

Nowhere in the Constitution is there any guarantee of a right to play football. If that right exists, therefore, it is ancilliary to some other right.

■ The only plausible argument is that playing football is a part of one's education and that education is a Constitutionally guaranteed right. This argument fails, however, in view of the Supreme Court's opinion in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973): "Education, of course, is not among the rights afforded explicit

protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." *See also* Paschal v. Perdue, 320 F.Supp. 1274 (S.D.Fla.1970).

It is therefore ordered, adjudged and decreed that this cause be and is hereby dismissed without prejudice for want of jurisdiction at Plaintiff's cost.