Cindy WISCH, Plaintiff,

v.

SANFORD SCHOOL, INC., Defendant.

Civ. A. No. 76–315.

United States District Court,
D. Delaware.

Oct. 6, 1976.

Steven J. Rothschild, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiff.

Rodney M. Layton and Roderick R. McKelvie, of Richards, Layton & Finger, Wilmington, Del., for defendant.

OPINION

CALEB M. WRIGHT, Senior District Judge.

This action arises out of the expulsion of plaintiff, a high school student, from a private school in Delaware, for an alleged infraction of the disciplinary rules of the school. Plaintiff brought a motion for a temporary restraining order or, alternatively, a preliminary injunction, requiring the school to reinstate her pending an adjudication of the claims raised in the complaint. Since notice was given to defendant prior to the hearing and defendant has had an opportunity to present affidavits, testimony and legal argument in opposition, this Court will consider plaintiff's motion as one for a preliminary injunction. See 11 Wright & Miller Federal Practice and Procedure § 2951.

Plaintiff, Cindy Wisch, is presently 17 years of age, a citizen of the United States and of the State of Connecticut. During the 1975–76 school year, plaintiff attended Sanford School, located in Hockessin, Delaware, which is owned and operated by defendant, Sanford School, Inc. Plaintiff re-enrolled as a boarding student at Sanford for the 1976–77 school year. Upon her return to school in the fall of 1976, she was assigned a single room in a dormitory located on campus. On the evening of September 17, 1976, Dr. David Smith, an employee of defendant, accused plaintiff, along with another student, Julie Rattner, of using marijuana in plaintiff's room. Shortly thereafter, either that evening or the following day, plaintiff met with the headmaster, Bruce E. Carlson, at which meeting Mr.

Carlson accused plaintiff of using marijuana. In response to Mr. Carlson's accusation, plaintiff admitted having possessed and used marijuana; in subsequent conversations with her mother, plaintiff did not deny either possession or use on the evening of the 17th.[1]

On September 18, 1976, plaintiff and Ms. Rattner were expelled from Sanford School. Plaintiff immediately returned with her parents to their home in Connecticut, where plaintiff resides at present. Plaintiff is a student with a history of learning and emotional disabilities. It is apparent from the record that during the school year 1975–76 at Sanford, plaintiff showed a marked improvement in emotional stability and academic performance, but that since her expulsion she has been severely depressed and remorseful.

Regulations of the Sanford School, as set out in the Student Handbook, provide that:

> Consumption, possession, or sale of alcoholic beverages or narcotics in any form is strictly prohibited and are grounds for suspension or expulsion from school.
>
> . . .
>
> Any unlawful act taking place on school grounds or school buses will be grounds for suspension or dismissal from school, and possible legal action as well.

No formal procedure for dealing with disciplinary problems is prescribed in the Handbook. Shortly after the beginning of the present school year, plaintiff attended an assembly for boarding students conducted by Mr. Carlson, at which all students in attendance were reminded that the rules and regulations of Sanford School prohibited use by students of alcohol, marijuana and other drugs and that any student found using or possessing any such item could be expelled. The students were also informed at that assembly that the type of disciplinary action imposed would be dependent upon the facts of each case.

During the previous school year, certain students, including Julie Rattner, who had been caught smoking marijuana were disciplined, but they were neither suspended nor expelled. Plaintiff has no record of previous violations of the rules and regulations of the Sanford School.

Sanford School is a private school with an enrollment of approximately 375 students. The school was chartered by the State of Delaware as a corporation in 1935. As an educational institution, it has been granted a tax exempt status under § 503(c)(3) of the Internal Revenue Code of 1954, and additionally is exempt from real property taxation. For fiscal year 1976–77, the school expects to spend $1,000,000.00 in operating expenses. During fiscal year 1975–76, Sanford School received the following funds from state or federal government sources:

(1) $114.00 per student (non-boarding) in transportation subsidies from the State of Delaware;

(2) Over $4,000.00 under the National School Lunch Program, the School Breakfast Program and the Special Milk Program, all of which are federal programs administered by the Delaware Department of Public Instruction;

(3) Less than $400.00 under the Elementary and Secondary Education Act, a federal program administered by the State Department of Public Instruction;

(4) One-fifth of the salary of a driver education teacher one day a week; and

(5) $5,000.00 grant from the federal government for a radio station.

█ As a prerequisite to the issuance of a preliminary injunction, the party must show both irreparable injury, *pendente lite*, and a reasonable probability of eventual success in the litigation. *Delaware River*

---

1. The only oral testimony on this point came from Cindy's mother, Mrs. Wisch, who testified on direct examination that Cindy told her, over the phone, that she had been smoking marijuana. On cross examination, Mrs. Wisch testified that Cindy never admitted smoking marijuana, but that she "assumed" that Cindy had been smoking. Taken in its most favorable light, Mrs. Wisch's testimony establishes that plaintiff never denied smoking marijuana. In light of this testimony, the Court finds nothing to contradict the statement in Mr. Carlson's affidavit that plaintiff admitted possession and use.

*Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917 (3rd Cir. 1974); *Bowers v. Columbia General Corporation,* 336 F.Supp. 609 (D.Del.1971). The Court is satisfied that plaintiff has demonstrated an imminent threat of irreparable injury if she is not immediately reinstated in the Sanford School. The more difficult question, therefore, is whether plaintiff has established a reasonable probability of success in the litigation on the merits. If plaintiff cannot demonstrate such a probability, injunctive relief by the Court at this stage of the proceedings would be meaningless. Plaintiff has brought constitutional, statutory and contractual claims against defendant. If, taking into consideration the early stage of these proceedings, the record reflects a likely probability of success, on any of these claims, preliminary relief must be granted.

### A. State Action.

■ Plaintiff alleges that defendant has deprived her of equal protection of the laws and substantive and procedural due process under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983,[2] in that she was summarily expelled without being presented with formal charges and without being afforded a hearing before an impartial tribunal before which she could confront witnesses against her and present evidence on her own behalf. A claim under either the Fourteenth Amendment or § 1983 can be sustained only if plaintiff establishes that "state action" was involved in the actions of defendant. *Bright v. Isenbarger,* 445 F.2d 412 (7th Cir. 1971). On this motion for a preliminary injunction, plaintiff must demonstrate a reasonable probability that state action sufficient to invoke the protection of the Four-

teenth Amendment or § 1983 can be found in the actions of the Sanford School.

■ Plaintiff must show that there was more than "some" state action in this case; not every involvement by the state in the affairs of a private individual or organization, whether through funding or regulation, may be used as a basis for a § 1983 or Fourteenth Amendment claim. The involvement must be "substantial". *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The courts have recognized that "conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). But the extent and the effect to that involvement can be measured only by the "sifting [of] facts and weighing [of] circumstances" test of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In applying the *Burton v. Wilmington Parking Authority* test, courts have examined a number of alternative considerations—the gross number of financial and regulatory contacts between the state and the private institution, the constitutional interests of both sides, the "public function" served by the private institution, and state regulation of the very activity which allegedly deprives plaintiff of a constitutional right. *See Pendrell v. Chatham College,* 370 F.Supp. 494 (W.D.Pa. 1974). These theories are not distinct and separate; they each incorporate the idea that "state action" must encompass more than the provision of certain governmental benefits which are available to all, without any significant involvement in the decision-making process of the private entity. The state must either have significant control

2. The Fourteenth Amendment provides that: " . . . [N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or

Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

1314

over an input into the policy-making process of the private institution, or be so involved in the financing and running of the institution that it in effect facilitates the constitutional violation complained of.

■ Plaintiff has failed to demonstrate significant state action in this case. The evidence presented through affidavits and at the initial hearing shows that Sanford School enjoys tax-exempt status under federal and state laws; that the school received some funds from the state government for transportation of pupils and partial payment of the salary of a drivers' education teacher; and that the school received additional funds from the federal government under various food programs, which funds are channeled through and administered by the State Department of Public Instruction. The funds received from the federal government, although they are channeled through a state agency, cannot be considered relevant to a determination of state action. Both the Fourteenth Amendment and § 1983 apply only to actions of "states", not to actions of the federal government. *Browns v. Mitchell*, 409 F.2d 593 (10th Cir. 1969). There is no evidence in the record to suggest that the state agency served as any more than a conduit for the federal funds; apparently very little discretionary authority, if any, was exercised by the State over those funds. The remaining funds paid directly to the school from the State Department of Public Instruction, primarily the transportation subsidies, represent a minimal contribution to the school's operating expenses, and clearly do not involve the state in the decision-making process of the school. Similarly, mere exemption from taxation, without a showing of substantially more state involvement, cannot be a basis for finding state action. *See Jackson v. Statler Foundation*, 496 F.2d 623 (6th Cir. 1974). Under Delaware law, private schools are subject to minimal regulation. All private schools must submit annual reports showing pupil enrollment and attendance figures under Title 14, Del.Code Annotated §§ 2703, 2704, but the State Department of Education has no control over curriculum or course material. No state agency has any voice in the making or enforcing of disciplinary procedures in the private schools. Under any theory of state action, plaintiff has failed to establish even a reasonable probability that the state has so insinuated or involved itself in the actions of the Sanford School as to invoke the protections of the Fourteenth Amendment and § 1983.

Moreover, in other cases involving similar factual situations, federal courts have reached the same conclusion.[3] In *Bright v. Isenbarger*, 314 F.Supp. 1382 (N.D.Ind. 1970), aff'd, 445 F.2d 412 (7th Cir. 1971), the expulsion by a private parochial school of two pupils for violation of a school disciplinary rule regarding absence was held not to be state action within the scope of § 1983. Evidence presented on a hearing for a preliminary injunction revealed that the State of Indiana regulated course and curriculum material in all schools, private or public, to a limited extent; that the private schools were exempt from property taxes; that students who attended parochial schools could use public school transportation; that the school participated in the school lunch program; and that a private or parochial school desiring to obtain a "certificate" or "commission" from the State Board of Education, for the purpose of certifying the students for various purposes, had to meet more extensive state requirements. No state requirements were imposed, however, on the content or procedure of a school's disciplinary code. In affirming, the 7th Circuit found that "the state played no role in defendant's expulsion of plaintiffs" and that "other more nebulous relationships between Indiana and the Catholic High School

**3.** There are a number of recent cases involving private universities, rather than secondary schools, in which federal courts also found no state action. *See, e. g., Pendrell v. Chatham College*, 370 F.Supp. 494 (W.D.Pa.1974); *Brown v. Villanova University*, 378 F.Supp. 342 (E.D.Pa.1974); *Grafton v. Brooklyn Law School*, 478 F.2d 1137 (2nd Cir. 1973); *Coleman v. Wagner College*, 429 F.2d 1120 (2nd Cir. 1970); *Grossner v. Trustees of Columbia University*, 287 F.Supp. 535 (S.D.N.Y.1968).

were insufficient to warrant attributing the expulsion of plaintiffs in any way to the action of the state." 445 F.2d at 413. *Morgan v. St. Francis Preparatory School,* 326 F.Supp. 1152 (M.D.Pa.1971), presents issues almost identical to those now before the Court. Plaintiffs in that case requested injunctive relief in the nature of reinstatement of a high school student by defendant, a private preparatory school. That student and eight others had been expelled from the school following an incident involving an alleged use of LSD. The student first admitted to the Headmaster having taken LSD, but later repudiated the admission before the trial judge. All students had been warned that the use of drugs would result in expulsion. Plaintiffs urged that the students had been deprived of procedural due process under § 1983. Without extensive discussion, the court held that "The expulsion here was by a private preparatory school with no significant relationship to the Commonwealth of Pennsylvania and thus the expulsion was not under color of state law." 326 F.Supp. at 1154. As the court found no reasonable probability of success on the merits, plaintiffs' motion for a preliminary injunction was denied. The Court feels that the facts of the present case are not significantly different from those before the courts in the *Bright* and *Morgan* cases. Accordingly, plaintiff has failed to demonstrate a reasonable probability of success under either the Fourteenth Amendment or § 1983.

### B. Implied Contract.

Plaintiff also seeks judicial review of her expulsion and reinstatement based upon her contention that the defendant school breached an implied provision of her contract with the school by expelling her for the infraction of which she is accused and in expelling her in the above described manner. Plaintiff's theory is that in consideration of the acceptance of her tuition and concomitant to undertaking the obligation to provide plaintiff with the educational

experience that a reasonable person would expect from the Sanford School, the school also undertook to act fairly and reasonably in disciplinary matters, treating each case individually and affording students ample procedural safeguards.

■ There is no question that the relationship between the parties here is a contractual one; *cf., Greene v. Howard University,* 271 F.Supp. 609 (D.D.C.1967); *Carr v. St. John's Univ.,* 17 A.D.2d 632, 231 N.Y. S.2d 410, aff'd, 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18; *Zanders v. Louisiana State Board of Education,* 281 F.Supp. 747 (W.D.La.1968); that terms of that relationship may be implied from the nature of the relationship, *see Booker v. Grand Rapids Medical College,* 156 Mich. 95, 120 N.W. 589; and, that those implied terms may govern the procedure by which a student may be disciplined and the sanctions imposed.[4] *Ryan v. Hofstra University,* 67 Misc.2d 651, 324 N.Y.S.2d 964, 973 (Sup.Ct., Spec. Term 1971). The Court is acutely aware of the very special nature of the relationship between a student and the school and the primary importance of education, both public and private, to the self-fulfillment of the individual and the growth of the society as a whole. However, in view of the basic fairness of the procedures followed by the school in this case, the Court need not detail the implications of those considerations. Examining the record before it and reviewing the appropriate case law, the Court is convinced that even if either the relationship between or the conduct of the parties gave rise to an implied contractual provision to adhere to basic requirements of procedural fairness in disciplinary matters, the demands of such a provision were satisfied in this case.

■ Basic procedural fairness is an elusive concept, the specific content of which is dependent upon the specific factual context. *Cf., Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The

4. *See* Note, "Developments in the Law, Academic Freedom", 81 Harv.L.Rev. 1045, 1145–47 (1968) for criticism of this approach.

Court's task to evaluate the school's conduct in terms of any basic fairness provision which could possibly be implied in the private school-student relationship would be greatly facilitated by the promulgation of a written code of disciplinary rules and procedures; the absence of any such code, however, does not *ipso facto* require a conclusion that the procedures followed in this case were unfair.[5] The Sanford School Handbook expressly proscribed the use or possession of marijuana, both in its general prohibition of illegal activities and its specific prohibition against the use of alcohol, marijuana, or other drugs. The school also provided students with notice in the school handbook that drug-related infractions could be grounds for suspension and expulsion. Headmaster Bruce Carlson repeated those rules at an assembly which plaintiff attended, and she acknowledged being aware of them. Therefore, this case is unlike *Carr v. St. John's Univ. of New York,* supra, in which the disciplinary code provision was held to be too vague and indefinite to provide any notice.

Plaintiff was confronted promptly with a specific and apparently detailed description of the infraction of which she was accused. *See Anthony v. Syracuse University,* 224 App.Div. 487, 489, 231 N.Y.S. 435, 438 (1928), reversing 130 Misc. 249, 223 N.Y.S. 796 (1927). Plaintiff met with the headmaster to discuss the matter and admitted that she had used marijuana on September 17th. There is no indication in the record that she would not have been afforded the opportunity to present her case had she denied her guilt. The headmaster allowed plaintiff to contact her parents and also contacted them himself to discuss the problem of her expulsion. In light of plaintiff's

knowledge that her conduct was prohibited and that expulsion was a possible disciplinary response to such conduct, the prompt and specific confrontation of plaintiff with the accusation against her, and her confession of guilt, the Court concludes that there has been no breach of any implied procedural fairness in the contract between plaintiff and Sanford School.[6]

### C. Estoppel.

◼ Plaintiff also argues that the school should be estopped from expelling her because it has expressed an intention to its student body that it will forbear from expelling students found using or possessing alcohol, marijuana or other drugs. That expression, plaintiff argues, was in the form of the imposition of less severe sanctions in other similar cases.[7] Without addressing the questionable applicability of promissory estoppel to the situation at hand, it is clear that the requisite factual predicate for a "promise" is not present. The school handbook for the current school year and speech by the headmaster at the beginning of the term both indicated that expulsion was possible for the drug-related infractions, so it cannot be said that the disciplinary responses of the school in previous years are grounds for a reasonable expectation of similar responses in this year. Moreover, the articulated policy of individualized treatment of disciplinary problems should have put any reasonable student on notice that dispositions of other cases had no precedential weight.

### D. In Loco Parentis.

◼ Finally, plaintiff contends that the school's dismissal of plaintiff violates

---

**5.** *See Grossner v. Trustees of Columbia University of City of N. Y.,* 287 F.Supp. 535, 552, n. 25 (S.D.N.Y.1968).

**6.** The Supreme Court has recently affirmed the judgment of a district court which allows corporal punishment to be administered by a public school provided that it follows procedures not significantly more rigorous than those followed in this case. *Baker v. Owen,* 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), affirm-

ing 395 F.Supp. 294 (M.D.N.C.1975). *See also Goss v. Lopez,* 419 U.S. 565, 582–84, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), (procedures required for ten day suspension from a public school).

**7.** There is an inconsistency between this assertion and the contention that the school impliedly contracted to deal with disciplinary problems on a case-by-case basis.

the obligations and responsibilities of the school arising out of its *in loco parentis* relationship to her. *In loco parentis* is a doctrine usually invoked by the schools as a source of disciplinary authority. *See* Note, Judicial Review of Expulsions, 72 Yale L.J. 1362, 1367–68 (1963). The doctrine does not, however, invest the school, public or private, with unlimited authority. Where a parent sends a child to a private school, he agrees to permit the application to his child of the disciplinary rules of the school, even though he may not know what those rules are. Restatement (Second) of Torts § 153(1), comment a. In this case, there is no indication of any particular agreement between the parents and the school concerning a restriction upon the school's rule permitting it to expel the child if she is found to be smoking marijuana. Therefore, absent any improper motivation on the part of the school in expelling plaintiff, she cannot be heard to complain that the school has acted in excess of its *in loco parentis* authority.

For the reasons stated, the plaintiff's motion for a preliminary injunction is denied. An order will be entered in accordance with the foregoing and this opinion shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.