Richard C. SWANSON, Carl S. Swanson, and Margaret C. Swanson, his wife, Plaintiffs,

v.

WESLEY COLLEGE, INC., a Delaware Corporation, Defendant.

Superior Court of Delaware, Kent County.

Submitted April 24, 1979.

Decided May 14, 1979.

Glenn E. Hitchens, of Morris, James, Hitchens & Williams, Dover, for plaintiffs.

Peter S. Feliceangeli, of Twilley, Jones & Feliceangeli, Dover, for defendant.

O'HARA, Judge.

This case is before the Court on defendant's motion for summary judgment. This suit involves the dismissal of plaintiff Richard Swanson ("Student") from his attendance at Wesley College ("College") for violation of the College's disciplinary rules and regulations. The Student has alleged deprivation of his right to due process and a breach of his contractual right to education with the College. The student seeks compensatory as well as punitive damages.

The events that lead up to Student's permanent suspension from the College began on Mischief Night in 1974. Student had been drinking beer with other young men and made threats to the lives of certain members of the College administration and one Roy Crim, a fellow student. The threat to the life of Crim was communicated to him personally by the Student.

Subsequently, Crim consulted with Dean Welch, who had also been threatened, and was advised to press criminal and/or disciplinary charges against the Student. Crim did both and thereafter the Student was arrested for Terroristic Threatening by the Dover Police. A preliminary hearing in Magistrate Court resulted in the dismissal of the charge. However, the disciplinary charges were not dropped.

Prior to the preliminary hearing on the criminal charge, Dean Welch had issued a letter to the Student providing him with written notice that he had been charged with violating three disciplinary rules. These rules were embodied in the 1974–75 *Student Handbook* and were, specifically, possession of a dangerous weapon (a hunting knife found in Student's room upon his arrest), conduct jeopardizing the health, safety, or civil rights of students or College employees, and terroristic threatening of a member of the College community. Each violation was separately punishable by suspension. Due to the severity of the charges, the Student was summarily suspended pending a hearing on the matter.

A hearing of the Campus Judiciary Board was held five days after receipt of the letter. Student was aware of the scheduled hearing and of the disciplinary procedure of the College and had engaged the services of an attorney, but neither the Student nor his representative appeared at the hearing nor protested its taking place prior to the preliminary hearing on the criminal charge. The proceeding was held in accordance with the procedure set out in the *Student Handbook*. The Board found the student guilty of each charge and they voted to permanently suspend him.

Student was informed of the suspension by letter. He appealed the decision to the College President. The President found the Board's decision to be supported by the evidence and affirmed the discipline. Thereafter, the Student and his parents instituted this suit against the College.

The defendant has alleged that the Student was not denied his right to due process because student disciplinary proceedings at a private institution are not subject to the rights and privileges embodied in the United States or Delaware Constitutions. The Student is specifically attempting to invoke the protection afforded by the Fourteenth Amendment of the United States Constitution and Article 1, § 7 of the Delaware Constitution. It has been determined that the latter section has substantially the same

meaning as the Fifth and Fourteenth Amendments of the Federal Constitution, *Opinion of the Justices*, Del.Supr., 246 A.2d 90 (1968).

■ The strictures of the due process clauses apply to governmental action only and not to private entities such as the College herein. Such a claim can only be sustained if it can be established that there was sufficient state action involved in the actions of the College. In the case of student disciplinary proceeding

". . . 'state action' must encompass more than the provision of certain governmental benefits which are available to all, without any significant involvement in the decision-making process of the private entity. The state must either have significant control over an input into the policy-making process of the private institution, or be so involved in the financing and running of the institution that it in effect facilitates the constitutional violation complained of." *Wisch v. Sanford School, Inc.*, D.Del., 420 F.Supp. 1310 (1976).

■ Such state involvement is measured by the standard set up in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). However, in the case at bar, there are no material facts in dispute. The plaintiff student posits a legal theory only to support his alleged right to due process, *see Belk v. Chancellor of Washington University*, E.D.Mo., 336 F.Supp. 45 (1970); *Guillory v. Administrators of Tulane University of La.*, E.D.La., 203 F.Supp. 855 (1962). The basic proposition behind the legal argument is that the performance of the educational process is, in and of itself, sufficient to constitute state action due to its nature as a public function. This Court, however, finds *Wisch v. Sanford School, Inc.*, supra, to be controlling in this jurisdiction and, therefore, the requisite state action is lacking in this case.

■ The parties agree that the relationship between the Student and the College is of a contractual nature citing *Wisch* for support. In accordance with such case law, they also agree that the standard of basic procedural fairness is to be used to measure the student disciplinary proceedings. The key to this standard is reasonableness. *Wisch v. Sanford School, Inc.*, supra. The Court in *Wisch* also stated that ". . . [B]asic procedural fairness is an elusive concept, the specific content of which is dependent upon the specific factual context." Therefore, what is reasonable depends on the individual circumstances of each case.

In the case at bar, the Student was informed by writing that there was to be a hearing before the Board four days before it occurred. Moreover, when no one appeared on his behalf, Dean Welch placed a phone call to the Student's father requesting information as to whether the Student would be in attendance. This additional endeavor by the College was over and above any duty it owed the Student.

There is no evidence in the record that successfully refutes the argument that the College acted reasonably and in strict accordance with its disciplinary procedure when it permanently suspended the Student. The terms of the contract of education are contained in the 1973–75 *Bulletin* and the 1974–75 *Student Handbook*. The right of the College to permanently suspend a student who commits a major violation after a judicial hearing is specifically reserved in the *Bulletin*. The enumeration of major violations is found in the *Handbook* under the heading "General Standards of Social Conduct of Wesley College." The Student admits that these publications are a part of the contract of education and that he had notice of the aforesaid provisions upon entering the College.

The Student has also admitted that he signed an application to the College containing the following covenant:

"If admitted, I will conduct myself at all times as a reputable and law-abiding citizen and conform cheerfully and in good faith with all the rules and regulations of the College governing student conduct and finances."

The disciplinary Board found the Student in violation of the standards for social con-

duct. Since the Student was in breach of the contract of education, the College acted reasonably in his suspension.

By creating standards of social conduct for the students and providing avenues for disciplinary review, the College is promoting the best interests of the students and the academic community as a whole. Such action is clearly within the scope of their authority.

It is the finding of this Court that the College acted reasonably in suspending the Student. Such action was not taken until after the Student had notice of the charges and the meeting of the Campus Judiciary Board had taken place with such

Board hearing the evidence against him and finding him guilty of the charges. The Student has then been accorded basic procedural fairness.

The defendant's motion for summary judgment is hereby granted in accord with the aforementioned reasons.

IT IS SO ORDERED.