336 F.Supp. 45 (1970)
John W. BELK et al., Plaintiffs,
v.
The CHANCELLOR OF WASHINGTON UNIVERSITY, Thomas H. Eliot, Defendant.
No. 70 C 151(A).
United States District Court, E. D. Missouri, E. D.
November 25, 1970.
Gray L. Dorsey, Chesterfield, Mo., Thomas J. Guilfoil, St. Louis, Mo., for plaintiffs.
William R. Bascom, Thomas C. Walsh, Edward T. Foote, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
HARPER, District Judge.
This matter is now before the court on defendant's motion to dismiss this action under Rule 12(b) (1), Federal Rules of Civil Procedure, because the court lacks jurisdiction. In the alternative, the defendant moves the court under Rule 12 (b) (6), Federal Rules of Civil Procedure, to dismiss this action because the complaint fails to state a claim upon which relief can be granted. The plaintiffs, all students at Washington University, bring this class action under 42 U.S.C.A. § 1983, and pursuant to Rule 23 of the Federal Rules of Civil Procedure. The plaintiffs seek actual and punitive damages, and injunctive relief in the nature of a mandatory injunction that would order the defendant Chancellor of Washington University, Thomas H. Eliot, to exercise the power of which he is clothed by the State of Missouri to prevent the repeated disruptions of classes and educational activities at Washington *46 University. The plaintiffs also seek to prohibit said defendant, Chancellor Eliot, from initiating, instigating, inviting, condoning, fostering, facilitating, encouraging, or knowingly failing to prevent activities on the Washington University campus which he knew or should have known would have the purpose or effect of abridging the rights of these students who desire to engage in educational activities under conditions that are conducive to such educational activities.
There are two asserted grounds for the relief sought by the plaintiffs:
First, the State of Missouri has granted to Washington University, a private institution, a charter by which the University has the power to conduct educational activities. This power to conduct educational activities and acts necessary for accomplishing this public purpose has been delegated to the defendant Chancellor of Washington University as chief executive of that university by the Washington University Board of Trustees. The plaintiffs then assert that the defendant Chancellor, although clothed by the State of Missouri through the delegation by the Board of Trustees, failed or refused to prevent the disruption of classes and educational activities by a small group of protesting students. Hence, it is the plaintiffs' position that the defendant Chancellor under color of state law has deprived each of the plaintiffs as students of Washington University his right to assembly, orderly process, free speech, and participation in the educational opportunities of an educational institution to which he was entitled to attend.
Second, the plaintiffs assume the delegation of power in the first point, and then assert that the defendant Chancellor by his statements of inviting students and faculty to cease educational activities in order to discuss ways of ending the war, violated his fiduciary duty to students who desired to engage in educational activity under conditions conducive to education.
The end result of the defendant Chancellor's inactivity under theory one and statements in theory two is that the plaintiffs have been denied their right to participate in an educational institution to which they were entitled to attend under conditions conducive to education. Such a denial by the defendant constituted "state action" in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).
The basic contention of the defendant Chancellor in his motion to dismiss for lack of jurisdiction is that there is no "state action" alleged by the plaintiffs upon which this court can grant jurisdiction. It is axiomatic that the due process provision of the Fourteenth Amendment to the United States Constitution upon which this cause of action is based encompasses only "state action", and that the acts of private individuals will not be considered unless they are acting under color of state law. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).
From this well-settled line of authority as to the requisite of "state action" for any cause of action under the due process clause of the Fourteenth Amendment, the defendant Chancellor contends that the granting of a charter by the State of Missouri to Washington University, a private institution, in no way constitutes sufficient "state action" by which the court can grant jurisdiction. Therefore, under 42 U.S.C.A. § 1983, this court is without jurisdiction as the necessary element of "state action" is not present. Adickes v. S. H. Kress & Company, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (June 1, 1970). In support of this contention that no sufficient "state action" for jurisdiction exists, the defendant Chancellor cites several cases involving "state action" in the private university. None of the factual situations *47 in the cases cited by the defendant reflect the facts of the plaintiffs' pleadings. In the cases of Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969); Torres v. Puerto Rico Junior College, 298 F. Supp. 458 (D.P.R.1969); and Powe v. Miles, 407 F.2d 73 (2nd Cir. 1969); the respective courts found no sufficient "state action" when the issue involved concerned the power of a private university to suspend students for disciplinary infractions. Thus, the above cases are only authority for the principle that the power exercised by a private university in disciplining student members is not "state action" under 42 U.S.C.A. § 1983.
The court in Browns v. Mitchell, supra, quoted from Grossner v. Trustees of Columbia University, 287 F.Supp. 535, 549 (S.D.N.Y.1968), l. c. 596:
"`No case anywhere and no acceptable extension of any pertinent principle, indicates that a University like [Denver] is engaged in "state action" when it takes such measures and conducts such procedures as those here in question.'"
Before finding no "state action", the court examined into the measures and procedures that the University of Denver utilized in suspending students. The court pointed out that the students were advised by the Chancellor of Denver that their demands would not be met, and that any sit-in would receive the severest discipline. The court noted that the students were warned during the demonstration that if they did not leave a nonpublic area of the university they would be dismissed. After the incident, the suspended students were advised of their right to appeal such dismissal to the University Conduct Review Committee. The students did appeal, and the Chancellor after reviewing the recommendation of the Committee, recommended a one-year suspension to the Board of Trustees, which approved the Chancellor's decision. Thus, the decision in Browns v. Mitchell, supra, as in all the student disciplinary cases, is predicated upon the desire of the court not to review the internal disciplinary affairs of a private university when the rules and procedures within the university are established. Such is not the issue before this court here.
A further distinction can be made between the authority as cited by the defendant and the pleadings of the plaintiffs. In the plaintiffs' complaint, the claimed involvement by the state is in every way associated with the challenged activity, that is, the plaintiffs are alleging that it was the inactivity (Count 1 of Complaint) and statements (Count 2 of Complaint) of the defendant Chancellor who was invested by the State of Missouri through the Board of Trustees with the power to preserve and protect the educational institution which deprived them of their right to academic freedom and the participation in the related educational activities of Washington University. The denial of such a right was thus under color of state law. In Browns v. Mitchell, supra, the claimed involvement of the state was a tax exemption. Likewise, the court found no state action in Torres v. Puerto Rico Junior College, supra, where the claimed involvement was the receipt by the University of federal funds. The state involvement in these two cases is quite remote from the issue presented here.
In addition to the above cases, the defendant cited Greene v. Howard University, 271 F.Supp. 609 (D.D.C.1967), as authority for the position that "state action" cannot be found in a private university. This case can no longer be cited for that position. In 1969, Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128 (D.C.Cir.) was remanded back to the district court. In footnote 2, at 1131, 1132, Judge McGowan stated:
"This disposition makes it unnecessary to deal definitively with the claim that the University is invested with a public character which renders it subject to the Bill of Rights, and that a consequence of that status is the obligation, by reason of the due process clause of the Fifth Amendment, to accord a hearing in circumstances like *48 those involved in this case. * * * [T]he amenability to constitutional commands of what was once widely assumed to be purely private activity is a fluid and developing concept." (Emphasis added.)
In order to recover under 42 U.S.C.A. § 1983, the plaintiffs must establish that they have been deprived of a right, privilege or immunity secured by the United States Constitution, and that such denial was under color of state law. Thus, the showing of "state action" is a requisite for recovery.
The issue of "state action" in this case is to what extent, if any at all, is the conduct of the chief executive of a private university "state action" when the university through its chief executive is preserving and protecting the educational process for its students from violations of their basic right to academic freedom.
The pleadings do allege that Washington University operates as a result of a charter granted by the State of Missouri and that the defendant Chancellor Eliot is the chief executive of that private university. It is the opinion of this court that the acts of a private university can constitute "state action" when said university is denying to its students their right to participate in the educational process. Education is a public function. The state granted a charter under which said university could operate as an educational institution. Hence, the private university's performance of a public function could render its actions subject to constitutional restraints.
In holding that the actions of a private university can constitute "state action", this court began from the principle that the private ownership or operation of a facility with a public interest does not automatically insulate it from the commands of the Fourteenth Amendment. The authority for this view has been well established in Public Utilities Commission v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1953); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).
The case of Public Utilities Commission v. Pollak, supra, illustrates that neither the operation of a privately-owned public utility corporation or a privately-owned transit corporation is precluded from the operation of the constitution. In Simkins v. Moses H. Cone Memorial Hospital, supra, the court held that a private hospital was subject to the dictates of the constitution and stated, 323 F.2d l. c. 968:
"And it is, of course, clear that when a State function or responsibility is being exercised, it matters not for Fourteenth Amendment purposes that the * * * [institution actually chosen] would otherwise be private: the equal protection guarantee applies."
In Marsh v. Alabama, supra, the court noted that a company-owned town could not deprive an individual of the rights that he is secured by the constitution. Judge Black in his opinion stated, l. c. 506, 66 S.Ct. 278:
"Thus, the owners of privately held bridges, ferries, turnpikes and railroads may not operate them as freely as a farmer does his farm. Since these facilities are built and operated primarily to benefit the public and since their operation is essentially a public function, it is subject to state regulation."
The pleadings of the plaintiffs with regard to the role of a private university in the educational process should be viewed in light of the above cases. Today, more than ever before, the area of education is a matter of the greatest public concern and interest. The Supreme Court of the United States has recognized the essential interest that the state does and must have in education when it stated in Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954):
"Today, education is perhaps the most important function of state and local governments. * * * It is required in the performance of our most basic public responsibilities, even service in *49 the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education."
The court in Guillory v. Administrators of Tulane University, 203 F.Supp. 855 (E.D.La.1962), recognized the role of the private university in the public function of education, and rejected the contention that the acts of a private university cannot be imputed to the state. With regard to private institutions of higher learning, the court stated, l. c. 858:
"At the outset, one may question whether any school or college can ever be so `private' as to escape the reach of the Fourteenth Amendment. In a country dedicated to the creed that education is the only `sure foundation * * * of freedom,' `without which no republic can maintain itself in strength,' institutions of learning are not things of purely private concern. The Supreme Court of the United States has noted that `[i]n these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.' Brown v. Board of Education of Topeka, supra, 347 U.S. 493, 74 S.Ct. [686] 691, 98 L.Ed. 873." (Emphasis added.)
Although the Guillory case was concerned with racial discrimination, the court likened the acts of private administrators in the university to the actions of private persons who governed a company town in Marsh v. State of Alabama, supra, or who ran a streetcar and bus service as in Public Utilities Commission v. Pollak, supra. The court then stated, 203 F.Supp., at 859:
"Clearly, the administrators of a private college are performing a public function. They do the work of the state, often in the place of the state. Does it not follow that they stand in the state's shoes?" (Emphasis added.)
The essential public function that private schools fulfill in education was again recognized in Browns v. Mitchell, supra. Although the court did not find the requisite "state action" in a student disciplinary case, the court stated at 409 F.2d 596:
"We may concede, without deciding, that judged by the totality of its public functions this University may be likened to Marsh and Logan Plaza for the purpose of exercising First and Fourteenth Amendment rights in its public ways."
"State action" cannot be determined by an exact formula. In fact, in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45, the court points out that the best approach to measuring state involvement in a case is through the inductive process of sifting facts and weighing circumstances. However, when in the area of state function and responsibility, the courts have recognized that the constitutional rights of its citizens must be protected.
This court holds that the conduct of the chief executive of a private university, in light of the public function of a private university in education, could amount to sufficient "state action" in order to grant jurisdiction to this court. It now remains for the plaintiffs at the trial to prove such allegations as would confer the necessary jurisdiction.
Accordingly, the motions of the defendant to dismiss this action for lack of jurisdiction and for failure to state a claim upon which relief can be granted are both overruled.
This order, in the opinion of the court, involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, and it is, therefore, further ordered that the defendant herein *50 may make application for appeal under the provisions of 28 U.S.C.A. § 1292(b), and if appeal is permitted, the proceedings herein are stayed until further order.