663 F.Supp.2d 25 (2009)
Luz M. ROSARIO DE LEON, Plaintiff
v.
NATIONAL COLLEGE OF BUSINESS & TECHNOLOGY, et al., Defendants.
Civil No.: 06-1457 (DRD).
United States District Court, D. Puerto Rico.
August 28, 2009.
*28 Lorenzo J. Palomares-Starbuck, Lorenzo Palomares PSC, San Juan, PR, for Plaintiff.
*29 Ivan E. Aponte-Gonzalez, I. Aponte Law Office, San Juan, PR, for Defendants.

OPINION AND ORDER
DANIEL R. DOMINGUEZ, District Judge.
Pending before the Court is Defendant's Memorandum of Law in Support of Defendants National College's, Carmen Z. Claudio's and Nancy Green's Motion for Summary Judgment (Docket No. 53), and Plaintiff's Response in Opposition to Motion for Summary Adjudication with Incorporated Memorandum of Law (Docket No. 58). After carefully reviewing the record, the Court GRANTS Defendant's Memorandum of Law in Support of Defendants National College's, Carmen Z. Claudio's and Nancy Green's Motion for Summary Judgment (Docket No. 53). The Court explains.

I. Procedural and Factual Background
Plaintiff, Luz Rosario de Leon ("Mrs. Rosario/Plaintiff") was enrolled in the Associate's Degree in Nursing offered by defendant, National College of Business and Technology ("National College/Defendant"). National College is a private institution of higher education and a recipient of federal funds. Mrs. Nancy Green ("Mrs. Green"), was Plaintiffs professor in the courses of "Nursing Intervention with Adults and Elders with Health Alterations I" (ENFE 1561), and "Nursing Intervention with Adults and Elders with Health Alterations II" (ENFE 1611P). The first course is the theoretical course and the second course is the practical nurse course. Furthermore, the second course is a practical-internship held at the University Hospital for Adults of the Department of Health of Puerto Rico.
At the beginning of the practical-internship course, Mrs. Green discussed with Plaintiffand other students enrolled in the same classthe course's evaluation methods. As part of the academic requirements, students had to prepare a Teaching Plan Report using a form that was provided by Mrs. Green. Plaintiff stated that Mrs. Green gave a deadline as to the Teaching Plan and asked if there were any questions. Plaintiff stated that she had no questions regarding the Teaching Plan nor the evaluation methods since it was all clear.
On May 26, 2005, during the practicalinternship course, Plaintiff provided medical assistance to a homeless patient in the hospital, and also provided spiritual assistance, allegedly at the request of the patient (Docket No. 62-2, p. 5). That same day, Mrs. Green met with Plaintiff to discuss the Teaching Plan form(Docket No. 56-3, p. 4). During the meeting, Plaintiff accepted to Mrs. Green that she "gave spiritual help to the patient and he accepted Jesus Christ as his personal savior for forgiveness of sins and for salvation" (Docket No. 56-2, p. 10). Mrs. Green answered in an authoritarian and harsh manner: "Rosario, you cannot do that. Did you read what the nursing book says about spiritual help?" (Docket No. 62-2, p. 5). Mrs. Green further stated: "[y]our problem is that you want to save the world" and "you [are] imposing religion" (Docket No. 56-2, p. 12).
After said incident, Plaintiff contends that she never delivered the written report regarding the Teaching Plan because Mrs. Green never asked for it. In addition to the Teaching Plan, all students had to prepare and present a case study pertaining to one of the patients assisted during the course. Plaintiffs presentation was held on June 23, 2005. The Evaluation Criteria Form used to grade the presentation was a standardized table which included a column for ranking from zero ("F") to *30 four points ("A"). Plaintiffs grade for this evaluation was a 77%, 173 points out of 224 points. Nevertheless, Plaintiff obtained an F ("Fail") as the final grade for the practical course (ENFE 1611P). Plaintiff claims that the "Fail" grade was based on religious discrimination and that Mrs. Green's evaluation was tainted because of Plaintiffs religious beliefs.
In her first cause of action Mrs. Rosario claims that Defendant violated her rights under the First Amendment and under the equal protection provisions of the Fourteenth Amendment of the U.S. Constitution. The second cause of action is brought under Title VI of the Civil rights Act, 42 U.S.C. § 2000d, along with Executive Order No. 13160, June 23, 2000, 65 FR 39775. Finally, Plaintiff alleges in her third cause of action that Defendants' discriminatory actions have also violated any and all the applicable statutes of Puerto Rico.

II. Summary Judgment Standard
The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir.1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir.1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir.1997).
At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957, 959-60 (1st Cir.1997); see also Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 53 (1st Cir.2000); Cortes-Irizarry, 111 F.3d at 187; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "`Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); see also Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).
Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Nevertheless, the First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the *31 party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." See Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991); see also Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." See Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir.1992) (discussing unopposed motion for summary judgment). Finally, a party that fails to properly oppose a motion for summary judgment, does so at its own risk and peril. See Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43 (1st Cir.2001); Hebert v. Wicklund, 744 F.2d 218, 223 (1st Cir. 1984). However, notwithstanding that there is no opposition to a summary judgement, the Court must entertain the motion on the merits and may not grant the request as a sanction even for failure to file an opposition. See de la Vega v. San Juan Star, 377 F.3d 111 (1st Cir.2004)
Issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgement. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgement and emphasizing that "determinations of motive and intent ... are questions better suited for the jury")(internal quotation marks omitted) (citation omitted).
We believe that summary procedures should be used sparingly . . . where motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of `even handed justice.'
Poller v. Columbia Broad. Sys., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); cf. Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William G. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp., 846 F.2d 103, 107 (1st Cir.1988); Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir.1988). "[J]ury judgments about credibility are typically thought to be of special importance. Thus courts are particularly cautious about granting summary judgment in such cases." See Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir.1983) (quoting Gual Morales v. Hernandez Vega, 579 F.2d 677, 680-81 (1st Cir.1978)); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir.2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir.1996).

III. Analysis

A. Federal Claims
Plaintiff alleges in her first cause of action, that the Defendant's actions denied Plaintiff her First Amendment rights in violation of the equal protection provisions of the Fourteenth Amendments of the *32 United States Constitution. Due to said Constitutional violations, Plaintiff requests compensatory damages, attorneys fees and the reimbursement of the litigation costs. In other words, Plaintiffs first cause of action requests constitutional damages against National College which is a private institution. Consequently, the Court must examine whether a claim for constitutional damages, pursuant to the facts of this case, can be brought against private individuals or entities.
"As a general matter the protections of the Fourteenth Amendment do not extend to `private conduct abridging individual rights.'" National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)).
When Congress enacted § 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred "under color of state law; thus, liability attaches only to those wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."
Id. (quoting Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).
In order to determine if a private person or entity acted under color of law, Plaintiff needs to prove that the Defendant's actions can be appropriately classified as state action. "`The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'" Federation Ecuestre, 34 F.Supp.2d at 103 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)).
State action has two components: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Alberto San, Inc. v. Consejo de Titulares, 522 F.3d 1, 4 (1st Cir.2008) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 927, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).
In regards to the first component, Plaintiff fails to allege that her First and Fourteenth Amendment rights were violated because of Defendant's "exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." American Manufacturers Mutual Insurance Company v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Nevertheless, assuming, arguendo, that Plaintiff has, complied with the first component, the Court finds that Plaintiff has also failed to comply with the second component. "[S]atisfaction of that first component is not sufficient in itself to satisfy the state action requirement. If it were, `private parties could face constitutional litigation whenever they s[ought] to rely on some state rule governing their interactions with the community surrounding them.'" Alberto San, Inc., 522 F.3d. at 4 (quoting Lugar, 457 U.S. at 937, 102 S.Ct. 2744).
"[A] private party can be fairly characterized as a state actor if the circumstances of the case meet one of three tests: the public function test, the joint action/nexus test, or the state compulsion test." Alberto San, Inc., 522 F.3d at 4. A private party meets the public function test if it is performing "a public function that has been `traditionally the exclusive prerogative of the State'". Estades-Negroni *33 v. CPC Hospital, 412 F.3d 1, 5 (1st Cir.2005) (quoting Blum, 457 U.S. at 1004, 102 S.Ct. 2777) (quoting Blum v. Yaretsky, 457 U.S. 991, 1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). National College is a private institution of higher education, which offers associate degree programs in health, business and technology, as well as bachelor degree programs in Education, Nursing and Office Systems. Nevertheless, the First Circuit Court, in Berrios v. Inter American University, 535 F.2d 1330, 1333 (1st Cir.1976), decided that although Art. II, § 5 of the Puerto Rico Constitution provides that every person has the right to an education,
nothing in the Constitution or the educational policy of Puerto Rico makes higher education at the University a public function. Higher education is not generally regarded as exclusively a function "traditionally associated with sovereignty", see Jackson v. Metropolitan Edison Co., supra, 419 U.S. at 353, 354 n. 9, 955 [95] S.Ct. at 455, 42 L.Ed.2d at 485; Greenya v. George Washington University, supra [512 F.2d 556 (1975) ]; Blackburn v. Fisk University, supra [443 F.2d 121 (6th Cir.1971) ]; Browns v. Mitchell, supra [409 F.2d 593 (10th Cir.1969)]; Powe v. Miles, supra [407 F.2d 73 (2d Cir.1968)]; Grossner v. Trustee [Trustees] of Columbia University, supra [287 F.Supp. 535 (S.D.N.Y. 1968) ]. But see Belk v. Chancellor of Washington University, 336 F.Supp. 45 (E.D.Mo.1970). Indeed, private higher education had always occupied a distinctive niche in our society. However the Constitution of Puerto Rico is read with respect to higher education, we find nothing in it that remotely calls into question the traditional status of private colleges and universities.
Hence, Plaintiff fails to comply with the first test. A private party meets "[t]he nexus/joint action test ... where an examination of the totality of the circumstances reveals that the state has `so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir.1999)). Notwithstanding, Plaintiff has failed to allege, nor is there any evidence in the record which shows, such joint participation between National College and the State. Plaintiff alleges in her Complaint that National College is authorized and accredited by the Council of Higher Education of the Commonwealth of Puerto Rico, as well as the Accrediting Council for Independent Colleges and Schools, which is a nationally recognized accrediting agency by the U.S. Department of Education and the Council for Higher Education Accreditation and, is certified by the U.S. Department of Education as an eligible institution to administer Title VI Federal funds. Nevertheless, the Court finds that this falls "well short of showing that [ ] the [National College was] so closely associated with the Commonwealth as to warrant judicial scrutiny under s 1983." Berrios, 535 F.2d at 1332.
The Supreme Court made clear early in its state action jurisprudence that state licensing was not enough to make a private entity a state actor, see Moose Lodge v. Irvis, 407 U.S. 163, 176, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), and the Court has repeatedly opined that regulation-even detailed regulation, as we have here-does not equate to state action, see, e.g., Jackson v. Metro. Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (a heavily regulated utility company was not a state actor).
Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 243 (3d Cir.2002).
*34 Furthermore, the fact that National College is a recipient of Federal funds is of no consequence, since the issue before the Court is the nexus/joint action between National College and the State, not the federal government. See Id., at 1335 FN. 5 ("The district court properly refused to take into account financial assistance from the federal government in considering the presence of state action.") (citing Blackburn v. Fisk University, 443 F.2d 121 (6th Cir.1971) and Browns v. Mitchell, 409 F.2d 593 (10th Cir.1969)). "[G]overnment regulation, even extensive regulation, and the receipt of federal funds, . . ., are insufficient to establish that [National College] acted under color of state law." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir.1994); see also Estades-Negroni, 412 F.3d at 6.
Finally, the third test (state compulsion test) considers whether "the State `has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni, 412 F.3d at 5 (quoting Blum, 457 U.S. at 1004, 102 S.Ct. 2777). The Court finds that Plaintiff fails to allege, nor is there any evidence in the record to show, any coercive power or significant encouragement by the State.
Therefore, Plaintiff failed to prove that Defendants acted under color of state or territorial law. See Pacheco v. Federation Ecuestre, 34 F.Supp.2d 101 (D.P.R.1999) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). Consequently, pursuant to the facts of this case and the evidence of record, Plaintiffs first cause of action, under the First and Fourteenth Amendment, fails as a matter of law.
Plaintiffs second cause of action, a religious discrimination claim, rests upon Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. Although Title VI only forbids discrimination on the grounds of: race, color, or national origin in "any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d, Plaintiff alleges discriminatory actions on the ground of religion, which is not proscribed by 42 U.S.C. § 2000d.
Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. Touche Ross & Co. v. Redington, 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (remedies available are those "that Congress enacted into law"). The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Statutory intent on this latter point is determinative. See, e.g., Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1102, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 812, n. 9, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (collecting cases). Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 145, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); Transamerica Mortgage Advisors, Inc. v. Lewis, supra, at 23, 100 S.Ct. 242; Touche Ross & Co. v. Redington, supra, at 575-576, 99 S.Ct. 2479. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." Lampf, Pleva, Lipkind, *35 Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 365, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (SCALIA, J., concurring in part and concurring in judgment).
Alexander v. Sandoval, 532 U.S. 275, 286-287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).
Plaintiff further alleges that since the Defendant is a recipient of federal funds she can sue under 42 U.S.C. § 2000d, pursuant the prohibition of discrimination declared in Executive Order No. 131160, June 23, 2000, 65 FR 39775, which prohibits "discrimination on the basis of race, sex, color, national origin, disability, religion, age, sexual orientation, and status as a parent ... in Federally conducted education and training programs and activities." (Emphasis ours). Pursuant to said Executive Order, the definition of "`[f]ederally conducted education and training programs and activities' includes programs and activities conducted, operated, or undertaken by an executive department or agency.'" In the instant case, although the National College is a recipient of federal funds, it is not a program or activity conducted, operated, or undertaken by any executive department or agency; Defendant is a private institution. Therefore, Plaintiffs religious discrimination claim cannot be couched under Executive Order No. 131160 of June 23, 2000, 65 FR 39775. Furthermore, a "private plaintiff may not bring a[ ] suit [under Executive Order No. 131160] against a defendant for acts not prohibited by the text of [Title VI]." Central Bank of Denver, N.A v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).
Therefore, absent a cause of action under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, Plaintiffs religious discrimination claim under Title VI fails as a matter of law. Consequently, Plaintiffs federal claims are hereby DISMISSED with PREJUDICE.

B. State Law Claims
In essence, Federal Courts by their very nature are courts of limited jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. Kokkonen, 511 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the Plaintiff, who claims jurisdiction, to affirmatively allege and prove jurisdiction. Id. To bring a civil action within the court's subject matter jurisdiction, a plaintiff must allege that her action "requires the resolution of a substantial question of federal law," City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); or that her action involves diversity jurisdiction. See 28 U.S.C. §§ 1331 & 1332.
It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiffs right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 [(1938)]. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surerfooted reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *36 United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
Consequently, since Plaintiffs federal claims have been DISMISSED, there is no federal cause of action on which Plaintiff may depend to anchor her supplemental claims. The Court therefore, declines to exercise the supplemental jurisdiction over Plaintiffs state law claims. See Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiffs federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); see also Rodriguez Cirilo v. Garcia, 908 F.Supp. 85, 92 (D.P.R.1995).

IV. Conclusion
For the reasons stated above, Defendant's Memorandum of Law in Support of Defendants National College's, Carmen Z. Claudio's and Nancy Green's Motion for Summary Judgment (Docket No. 53), is hereby GRANTED. Plaintiffs federal claims are dismissed with prejudice and the state claims are dismissed without prejudice. Judgment shall be entered accordingly.
IT IS SO ORDERED.