**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2101
_____

TODD M. HOUSTON,

Appellant

v.

TOWNSHIP OF RANDOLPH;
TOWNSHIP OF RANDOLPH FIRE DEPARTMENT;
JOHN MCANDREW; JOHN DOES 1-5

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-11-cv-04810)
District Judge:  Honorable Kevin McNulty

Submitted under Third Circuit LAR 34.1(a)
on January 17, 2014

Before:  RENDELL, ROTH and BARRY, Circuit Judges

(Opinion filed:  March 17, 2014)

O P I N I O N

**ROTH**, Circuit Judge:

Todd M. Houston appeals the District Court's order granting summary judgment

to the defendants, the Township of Randolph, the Township of Randolph Volunteer Fire

Department (RVFD), and RVFD's Chief, John McAndrew. For the reasons set forth below, we will affirm.

## I. Background

The material facts in this case are not in dispute. The Township of Randolph is located within Morris County, New Jersey. Beginning in approximately 2001, Houston served as a volunteer firefighter with RVFD. In addition, Houston was a full-time firefighter for the North Hudson Fire & Rescue Company until 2009, when he retired with a permanent disability after suffering an injury on the job. After this injury, Houston remained involved with RVFD as the Captain of the Department's Rapid Intervention Team (RIT). Houston later resigned as RIT Captain, but continued to participate in and direct training for the RIT.

The RIT is a firefighting unit that deploys to neighboring jurisdictions in Morris County, New Jersey, to support the fighting of fires by the local jurisdiction. In essence, crews of the RIT rapidly deploy to a fire to stand ready to rescue firemen who might get caught in the blaze, but RIT crews do not actually fight the fire themselves. The genesis of this dispute stems from Houston's disagreement with Chief McAndrew about the application of RIT policies in the field. In particular, Houston is of the opinion that a RIT crew should not be dispatched to support firefighting efforts unless it can field a

minimum of five members. Houston regularly complained to Chief McAndrew any time a RIT crew was dispatched with fewer than five members.[1]

Morris County has adopted a set of RIT "Best Practice Guidelines," which were also adopted by RVFD in February 2011. The Guidelines state that a RIT "will have" one "Group Supervisor," one "Leader," and three additional "members at all times." The Guidelines also indicate that "[a]nyone using this document should rely on his or her own independent judgment." Further, the Guidelines expressly state that the committee that created the document makes "no guarantee or warranty as to the accuracy or completeness of any information" published in the Guidelines. Standards promulgated by the National Fire Protection Association, on which the RVFD Best Practice Guidelines are based, indicate that a RIT "team shall consist of a minimum of two personnel . . ., but four personnel are preferred and shall be used when possible."

On three occasions in 2010 and 2011,[2] RVFD dispatched a RIT crew with fewer than five members. Chief McAndrew explained that during those incidents, fewer than five of RVFD's RIT crew members were immediately available. Thus, RVFD decided to promptly dispatch a partial team to the incident, rather than delaying the dispatch until a full complement became available or being unable to assist the neighboring jurisdiction at

---

[1] The record also reflects that Houston had disagreements with Chief McAndrew regarding the training of RIT members, including at least one incident in which Houston was defiant and openly criticized Chief McAndrew's training plan.

[2] We note that, even drawing all reasonable conclusions in favor of Houston, only one of these dispatches occurred after RVFD adopted the Morris County Guidelines that Houston relies on as the basis of his state-law claim.

all.  Houston complained to Chief McAndrew after the first two incidents, arguing that no RIT crew should be dispatched unless and until five RIT members are available.

After the third incident in July 2011, Houston sent Chief McAndrew a letter stating that he could "no longer function as the training officer" of the RIT because of the RVFD's purported "repeated disregard of the numerous rules, regulations and guidelines pertaining to" the RIT.  In a response letter, Chief McAndrew "accept[ed]" Houston's "resignation" and further instructed Houston "not to proctor, lecture, instruct, or participate in any training at all with the" RIT or RVFD.  Chief McAndrew further suggested that Houston "take a break and re-evaluate if [Houston could] be cooperative and participate with" RVFD.

Houston filed this action on August 19, 2011, alleging various federal and state-law claims.  The District Court granted summary judgment for the defendants on each claim.  Houston appeals.

## II.    Discussion[3]

We employ "a *de novo* standard of review to grants of summary judgment, 'applying the same standard as the District Court.'"  *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995)).    Under this standard, a court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Id.* (internal quotation marks omitted).  A court "shall grant summary judgment

---

[3] The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Although Houston asserted several federal and state-law claims related to the termination of his role with RVFD, he presses only two on appeal: a First Amendment retaliation claim and a state-law claim pursuant to the New Jersey Conscientious Employee Protection Act (CEPA).

The District Court correctly granted summary judgment to the defendants on Houston's First Amendment claim. Houston's role as a volunteer firefighter is sufficient to trigger First Amendment scrutiny. *See Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1364 (3d Cir. 1993). Nevertheless, it is apparent that Houston's statements regarding RIT staffing levels and training procedures were made pursuant to his duties with the RVFD and therefore receive no First Amendment protection. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As he stated in a letter to Chief McAndrew, Houston's role as "the person responsible for training" the RIT included the "duty to correct errors and deviations in [RIT] procedures." Thus, Houston's complaints regarding RVFD's training and dispatch protocols for its RIT were made "pursuant to [his] official duties" and receive no First Amendment protection. *Garcetti*, 547 U.S. at 421; *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006).

The District Court was also correct to grant summary judgment to the defendants on Houston's CEPA claim. Among other things, CEPA provides that an "employer shall not take any retaliatory action against an employee because the employee . . . [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonable

5

believes . . . is incompatible with a clear mandate of public policy concerning the public health, safety or welfare." N.J. Stat. Ann. § 34:19-3c(3). The "threshold determination" that the court must make is to identify a "clear mandate of public policy" with "a substantial nexus" to the complained-of conduct. *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003). A "clear mandate of public policy suggests an analog to a constitutional provision, statute, and rule or regulation *promulgated pursuant to law* such that . . . there should be a high degree of public certitude in respect of acceptable versus unacceptable conduct." *Maw v. Advanced Clinical Commc'ns, Inc.*, 846 A.2d 604, 607 (N.J. 2004) (internal quotation marks omitted).

Houston's reliance on the Morris County Best Practices Guidelines does not meet this standard. The Guidelines are expressly not an inflexible mandate on the RVFD, as they indicate that "[a]nyone using [the] document should rely on his or her own independent judgment." Further, any potential mandate imposed by the Guidelines is not "clear," because the Guidelines were designed to be "consistent" with "NFPA standards," which indicate that fewer than five RIT members may be dispatched. Moreover, Defendants submitted evidence to the trial court indicating that the practice throughout Morris County was to defer to the judgment of the commander at the scene of the fire with regard to RIT deployments, even if that deference resulted in the deployment of fewer than five RIT members from a single jurisdiction. In light of this evidence, the Guidelines are more properly characterized as an aspirational best practices document, and not a clear mandate of public policy.

6

We recognize that the New Jersey Supreme Court has previously determined that an industry safety guideline can, in some circumstances, be a source of public policy on which a CEPA claim may be based. *See Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1014–15 (N.J. 1998). The key factor in *Mehlman*, however, was that "the practical effect of the guideline was essentially equivalent to the effect of governmental regulatory action." *Id.* at 1015. The Guidelines at issue in this case are expressly subject to the discretion of the RVFD and therefore may not serve as the basis for a clear mandate of public policy for a CEPA claim.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the defendants.