NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2075
_____

LEWIS EGGERT, SR.,
                    Appellant
v.

T. RICHARD BETHEA; DEBORAH BUZBY-COPE;
KENNETH G. HOLMAN; JAMES R. PINE; EUGENE KOBRYN;
RAYMOND GORMLEY; ALBERT J. GENTLESS;
PATRICIA GENTLESS; LAUREN MEGLINO-RUNZA;
HANNAH JOHNSEN YADEVIA; EDWARD NUTTALL;
THE GREAT BAY REGIONAL VOLUNTEER EMERGENCY MEDICAL
SERVICES, INC.
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-11-cv-07166)
District Judge: Honorable Michael A. Shipp
_____

Submitted Under Third Circuit LAR 34.1(a)
June 8, 2015


Before: AMBRO and COWEN, <u>Circuit Judges</u>
and RESTANI,♦ <u>Judge</u>

(Opinion filed: August 27, 2015)

---

♦ Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by
designation.

_____

OPINION[*]

_____

AMBRO, Circuit Judge

## I. Background

In 1999 four New Jersey municipalities—Bass River Township, Eagleswood Township, Little Egg Harbor Township, and Tuckerton Borough—founded a volunteer emergency medical service called Great Bay Regional Volunteer Emergency Medical Services ("Great Bay"). The Mayor of each municipality serves on Great Bay's governing body of Trustees. In that capacity, they have the power, under the bylaws of Great Bay, to appoint the day-to-day leadership of the emergency-response squad. Appellant Lee Eggert Sr. served as a Trustee when he was Mayor of Tuckerton Borough from January 2007 through April 2010. He also volunteered for Great Bay as an "associate member driver."

Eggert's affiliation with Great Bay was the source of much conflict. One source was his belief that Great Bay's members, not the Trustees, should decide who leads the emergency-response group. Eggert maintained that Great Bay's bylaws contemplated a transition in governance from the Trustees to its member-volunteers beginning on December 31, 2001. But that never happened because the Trustees exercised their voting power to maintain oversight of Great Bay.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

To make public his criticism, Eggert published an editorial in a local newspaper, describing what he perceived as a number of managerial missteps. But rather than limit his criticism of Great Bay to its "government[-]run structure," J.A. 227, he made insulting and unflattering comments about his colleagues and discussed a number of internal incidents. Consequently, Eggert was suspended from Great Bay (and ultimately expelled) for, among other transgressions, engaging in conduct unbecoming of a member. Eggert sued under 42 U.S.C. § 1983, claiming his expulsion violated his free speech and due process rights. The District Court granted summary judgment for all defendants, and Eggert appeals.

## II. Analysis

"To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." *Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014). On the First Amendment question, "we must determine whether the speech [in question] involves a matter of public concern." *Versage v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1364 (3d Cir. 1993). If it does, we apply the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and "balance the speaker's interests in engaging in the speech and the public's interests in hearing the speech against the organization's interests in promoting the efficiency of services it performs through its employees or, in this case, volunteers." *Versarge*, 984

3

F.2d at 1364. "[T]he amount of disruption a public employer has to tolerate is directly proportional to the importance of the disputed speech to the public." *Miller v. Clinton Cnty.*, 544 F.3d 542, 549 n.2 (3d Cir. 2008). Among the relevant considerations are whether the speech at issue "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Eggert contends the District Court's *Pickering* balancing was flawed because it gave too little weight to his identification of "abuses by public officials" and their failure "to discharge their duties in a proper manner when public safety and welfare [are] at stake." Eggert Br. 25. We cannot agree. While it is true that "[s]peech involving government impropriety occupies the highest rung of First Amendment protection," *Swineford v. Snyder Cnty.*, 15 F.3d 1258, 1274 (3d Cir. 1994), Eggert's editorial raises nothing of the sort. The closest he comes to doing so is questioning whether the Trustees should continue to oversee the affairs of Great Bay. But this is conduct far from unlawful. Moreover, like the District Court, we believe the central purpose of the editorial was to launch *ad hominem* attacks against a number of Eggert's colleagues at Great Bay. Even assuming those affronts implicate a matter of public concern, such "[c]arping criticism . . . [has] no place in a small organization that depends upon common loyalty—'harmony among coworkers.'" *Versarge*, 984 F.2d at 1367; *see also Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 26 (2d Cir. 1979) ("The baleful glance,

4

the hostile look, and the positive distaste for the trouble-maker on the part of his fellow volunteers, coupled with the lingering resentment on the part of appellant himself at not being given the authority he sought, would hardly invoke the comradeship that makes a fire-fighting unit successful."). Thus, we find no error in the District Court's conclusion that the *Pickering* balancing test weighs in favor of Great Bay, and Eggert's retaliation claim fails as a matter of law.

Having disposed of Eggert's First Amendment claim, we move to his due process claim, which requires him to show "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [Eggert] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Eggert loses on the first prong. He has no "legitimate claim of entitlement" to his volunteer position with Green Bay, *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007), and any benefits he received from the position were "de minimis" and therefore "not entitled to the constitutional requirements of due process," *Versarge*, 984 F.2d at 1370 (holding that the benefits of being a volunteer firefighrter were insufficient to establish a property interest for due process purposes). Hence both Eggert's procedural and substantive due process claims are unfounded.

*     *     *     *     *

For all the above reasons, we affirm.