# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STEVEN GERMAIN, )
)
)
v. ) C.A. No.: N25C-08-098 SSA
)
CARA VIERA, MIKE )
LENNON, ANDREW LLOYD, )
JIMMY DOUGHTEN, MILL )
CREEK BOARD OF DIRECTORS )
)
Defendants. )

Submitted: November 21, 2025[1]
Decided: November 25, 2025

## MEMORANDUM OPINION

Steven Germain, a longtime volunteer of a non-profit private entity, admittedly sent a text message to a female associate, indicating he "had a mental thought of slapping her on the butt." She responded that would be inappropriate. He acknowledged she was correct and apologized. This incident was reported. Mr. Germain's association with the non-profit was thereafter terminated. Mr. Germain filed this lawsuit alleging Defamation, Violation of Due Process, Intentional Infliction of Emotional Distress, and Malicious Prosecution.

Defendants Cara Viera, Mike Lennon, Andrew Lloyd, Jimmy Doughten, and Mill Creek Board of Directors argue the Complaint cannot withstand 12(b)(6) scrutiny. At oral argument, Plaintiff advised he has no opposition to the Motion as

---

[1] The Court heard oral argument on October 17, 2025 and took the matter under advisement. Thereafter, the Court wrote to the parties, supplying the Supreme Court decision in *Cousins v. Goodier*, inviting comment. *See* D.I. 26.

to Intentional Infliction of Emotional Distress and Malicious Prosecution. This decision will therefore focus on Defamation and Violation of Due Process. The Court must now decide whether those allegations survive a Motion to Dismiss. For the reasons that follow, it does not.

### *Factual Background*

After the text exchange outlined above, Plaintiff was notified by letter that Fire Department leadership received a formal complaint, alleging a violation of the sexual harassment and conduct policies.[2] The letter notified Plaintiff an investigation had been initiated. He was suspended. He was instructed not to have contact with the Fire Department while the investigation was pending. The letter from leadership did not specify the conduct at issue.

The same day, Plaintiff replied via email.[3] Within, he provided the factual background for the incident outlined above and attached to the Complaint. Specifically, the email advised Plaintiff engaged a female colleague in a text exchange wherein he stated he had "a funny thing to share, but don't get mad or something like that."[4] This responsive email from Plaintiff went on to describe his next text to his female colleague as, "I said it was funny when I was coming into the meeting hall, and everyone was there she was reaching over the table to Andrew,

---

[2] Exhibits to Complaint, p. 2.
[3] *Id.* p. 4.
[4] *Id.*

2

and I said it was funny because I had a mental thought of slapping her on the butt."[5] This email from Plaintiff described the exchange as "common silly banter."[6] Plaintiff stated he "will take 100% responsibility for my comment."[7] He suggested the Fire Department "skip all the formalities, as we typically would do with investigations, and take it as it was."[8] At the close of his email, Plaintiff stated "[u]nless I am removed from my positions, as I am in the middle of several fire house projects that need immediate attention from me."[9]

The next day, Plaintiff sent another email.[10] While not within the record, this second email references a department-wide notification of his suspension. Within this communication, Plaintiff quotes the "Anti-Harassment Policy."

> A Member, who believes they are being harassed, or are a victim of harassment, should first try to make it clear to the harasser that their conduct is unacceptable and unwanted. If that does not resolve the problem, the Member should promptly and confidentially report the incident to any Company officer. It shall be the officers' responsibility to report the incident to the Chief, President, or Chairman of the Board of Directors...The Chief, President, and Chairman of the Board of Directors are responsible for addressing the issue at the next Board of Directors meeting.[11]

Plaintiff's second email also quotes the Sexual Harassment Policy:

---

[5] Exhibits to Complaint p. 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Exhibits to Complaint p. 6.
[11] Exhibits to Complaint p. 6.

Sexually harassing conduct in particular includes all of these prohibited actions as well as other unwelcome conduct, such as: unwelcome sexual flirtations, advances, or propositions: verbal abuse of a sexual nature; subtle pressure or requests for sexual activities; unnecessary touching of an individual; graphic comments about an individual's body; a display in the workplace of sexually suggestive objects or pictures; sexually explicit or offensive jokes; or physical assault.[12]

Plaintiff sought to categorize his text as "offensive jokes and none of the remaining description in the above paragraph."[13] He went on to cite the handbook which outlined a policy on investigations of allegations of harassment. In relevant part, the policy states "[e]very reported complaint of harassment will be investigated thoroughly and promptly."[14] It goes on to outline the process for the "typical"[15] investigation. Plaintiff emphasized the portion which states "[t]he investigation will be handled in as confidential a manner as possible with a full, fair, and proper investigation."[16] Plaintiff's second email acknowledged an upcoming meeting with leadership.[17] In closing, Plaintiff wanted to know who advised the Chairman to share "confidential information"[18] with the company. Of note, neither the Complaint nor its exhibits include a copy of exactly what was shared with the company.

---

[12] *Id.*
[13] Exhibits to Complaint p. 7.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at p. 8.
[18] The Court pauses here to note the Anti-Harassment Policy provided by Plaintiff states "the member should promptly and confidentially report…" but does not reference an obligation of confidentiality by the leadership.

4

Five days later, Plaintiff was notified the Board took action to expel him from the Fire Department "in response to a recent complaint regarding your conduct."[19] Plaintiff then sent another email, this time to the "Members & Staff." [20] There, Plaintiff stated he was denied the opportunity to state his case and asserted the complainant was being used by leadership to "push this through."[21] He asserted "this incident wasn't handled per "OUR" policies."[22] Plaintiff sent a request to have someone present a letter on his behalf to the fire company.[23] Within, he cited the same policies outlined above. He categorized his expulsion as "false & deceitful."[24] Plaintiff warned "[e]scalation of this outside the membership can and will result in at least one or more Civil lawsuits against the accuser & its accomplice's:"[25]

At oral argument, it was determined that Mill Creek is a non-profit private entity, created by a church social group, but organized under Delaware law. While it receives funding from the State, the extent of the funding is unknown. Mill Creek is controlled by a Board of Directors, who are not appointed by the State. The Board is not subject to State control. Mill Creek is not part of the City Charter. Plaintiff was a volunteer with the Fire Department for over 14 years. The Complaint alleges

[19] Complaint, Exhibits p. 12.
[20] *Id.* at p. 14.
[21] *Id.*
[22] *Id.*
[23] Complaint, Exhibits p. 18.
[24] *Id.*
[25] *Id.*

Plaintiff's character and integrity have been attacked and that the actions he complains of have greatly affected his life, marriage, business, family and neighbors. The Complaint does not seek specific relief. At oral argument, the Court inquired as to the relief sought. Plaintiff stated he wants an apology and wants to expose the truth.

### Standard of Review on a Motion to Dismiss

The standard by which this Court reviews a motion to dismiss filed pursuant to Superior Court Civil Rule 12(b)(6) is well-established. The Court must accept as true all well-pleaded allegations;[26] however, claims that are "clearly without merit" will be dismissed.[27] The Court will not "accept conclusory allegations unsupported by specific facts."[28] A motion to dismiss shall be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[29] The Court must draw every reasonable factual inference in favor of Plaintiff.[30] The Court will address the Motions to Dismiss with these

[26]*Sterling Network Exchange, LLC v. Digital Phoenix Van Buren, LLC*, 2008 WL 2582920, at *4 (Del. Super. Mar. 28, 2008) (citing *Lesh v. Appriva*, 2006 WL 2788183, at *3 (Del. Super. June 15, 2006)).

[27]*Caldera Properties-Lewes/Rehoboth v. Ridings Dev., LLC*, 2008 WL 3323926, at *11 (Del. Super. June 19, 2008) (quoting *Wilmington Trust Co. v. Politzer & Haney, Inc.*, 2003 WL 1989703, at *2 (Del. Super. Apr. 25, 2003)).

[28] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).

[29]*E.I. Du Pont de Nemours & Co. v. Allstate Ins. Co.*, 2008 WL 555919, at *1 (Del. Super. Feb. 29, 2008) (citing *Atamian v. Gorkin*, 1999 WL 743663, at *5 (Del. Super. Aug. 13, 1999)).

[30] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531 (Del. 2011).

standards in mind, but must first outline the law regarding due process and defamation claims to frame the issues properly.

## *Due Process*

*Governmental Action Required*

"The strictures of the due process clauses apply to governmental action only and not to private entities…Such a claim can only be sustained if it can be established that there was sufficient state action involved in the actions []."[31]   "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State."[32]  Whether action is private or state "frequently admits of no easy answer."[33]

Fortunately for the Court, whether a Delaware volunteer fire department is a governmental actor has been thoughtfully and recently addressed by this Court in *Dufresne v. Camden-Wyoming Fire Company*.[34] The question is "whether the private entity's conduct is 'fairly attributable to the State.'"[35]  *Dufresne* lays out various Constitutional tests applied to determine whether the fire department's conduct is attributable to the State such that due process shall be required in its actions.

---

[31] *Swanson v. Wesley College, Inc.*, 402 A.2d 401 (Del. Super. 1979).
[32] *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).
[33] *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974).
[34] 2020 WL 2125797 (Del. Super.).
[35] *Id.* at * 3 citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

7

Ultimately, the Court determined the fire department at issue in *Dufresne* was not a governmental actor. The three tests outlined and discussed in *Dufresne* are distilled as follows:

1. Whether the Fire Company was created by a special act of the General Assembly, under *Lebron v. National Railroad Passenger Corporation*.[36]
2. Whether, in the State of Delaware, the Fire Company exercised power exclusively and traditionally held by the government.[37]
3. Whether the State was involved in the challenged conduct by coercion, a close nexus, or joint participation under *Blum v. Yaretsky*.[38]

*Property Interest Required*

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.[39]

In *Delaware State Troopers*, the Court concluded the caselaw in this area requires a factual determination but noted in most cases "the entitlement or benefit must derive from some statute, ordinance, regulation or contract, either express or implied, or a combination thereof..."[40] In *Houston v. Township of Randolph*,

---

[36] *Id.* examining *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995).

[37] *Id.* * 4 examining *Manhattan Community Access Corporation v. Hallek*, ---- U.S. ----, 139 S.Ct. 1921, 1928.

[38] 457 U.S. 991, 1004 (1982).

[39] *Delaware State Troopers Lodge, Fraternal Ord. of Police, Lodge No. 6 v. O'Rourke*, 403 A.2d 1109, 1111 (Del. Ch. 1979) quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[40] *Id.* at 1112.

plaintiff claimed a property interest in his role as volunteer firefighter but this claim failed given the absence of "a legitimate, more than *de minimis*, property interest in his volunteer position...."[41] "The 'Supreme Court has held that a public employee with no statutory or contractual entitlement to his employment has no property interest subject to the protection of the Fourteenth Amendment.'"[42] "[T]his would apply to a volunteer position."[43]

*Sufficient Process*

*If* a Plaintiff establishes Defendants were government actors *and* that he has a property interest in his volunteer position, the next question is whether he has put forth sufficient allegations to suggest he did not receive the requisite due process. "The fundamental requirement of due process is the opportunity to be heard 'at a

---

[41] *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 733 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014) *citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[42] *Id.* at 733–34 (citations omitted).

[43] *Id.* at 734. See also *Dunkel v. Mt. Carbon/N. Manheim Fire Co.*, 970 F. Supp. 2d 374, 380–81 (M.D. Pa. 2013) *citing Versarge*, 984 F.2d at 1370 ("[Plaintiff's] life membership status and death benefit are *de minimis* because [he] cannot access these interests unless he is a member of the fire company."); *Steffey v. Agora Cyber Charter Sch.*, 2018 WL 6696816, at *2 (E.D. Pa.) *citing Versarge*, 984 F.2d at 1370; *O'Toole v. Klingen*, 2017 WL 132840, at *8–9 (D.N.J.) *citing Dunkel*, 970 F. Supp. 2d at 380-81 ("As pled, Plaintiffs have alleged *de minimis* benefits that do not carry with them a right to due process. As noted, Plaintiffs have no property interest as volunteers to continued membership in MEMS. Plaintiffs additionally have no right to property interests that are "inextricably tied" to their positions as volunteer first aid workers. Plaintiffs rights to workers' compensation, liability insurance, the LOSAP program and uniforms are all dependent on Plaintiffs' membership status."); *Eggert v. Bethea*, 625 F. App'x 54, 56–57 (3d Cir. 2015); *Wanco v. Twp. of Rochelle Park*, 2017 WL 3158752, at *8 (D.N.J.); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 2014 WL 4663907, at *4 (W.D. Va.).

meaningful time and in a meaningful manner.'"[44] *Mathews v. Eldridge* established

a three-factor test to determine what process is required in a given circumstance.[45]

(1) The private interest to be affected by the state action.
(2) The risk of an erroneous deprivation through the procedures uses and the probative value of additional or substitute safeguards; and
(3) The government's interest.

### *Defamation*

"[A] defamation plaintiff must plead and ultimately prove that the defendant

made a statement about the plaintiff that would be understood as defamatory by a

reasonable third party and was published, meaning that it was 'communicat[ed] by

any method, to one or more persons who can understand the meaning.'"[46] Analysis

of a defamation claim depends on whether the allegedly defamatory statement

concerns one of public concern.[47] The question is whether the statement(s)

complained of "can be fairly considered as relating to any matter of political, social,

or other concern to the community."[48] "[I]f the content and circumstances of a

private communication are such that the message conveyed would be relevant to the

process of self-governance if disseminated to the community, that communication is

---

[44] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951),
[45] *Id.* at 335.
[46] *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) quoting *Page v. Oath, Inc.*, 270 A.3d 833,843 (Del. 2022) (internal citation omitted) and Dobbs, et. al., The Law of Torts § 520, p 176 (2011).
[47] *Cousins v. Goodier*, 283 A.3d 1140 (Del. 2022).
[48] *Id.* at 1152 (internal citations omitted).

public concern speech even though it occurred in a private context."[49] If the allegedly defamatory statement is of public concern, then Plaintiff must establish the statement is "provably false" for it to be actionable.[50] If the statement(s) at issue are of a public concern, then the Court must decide whether they "are provably false, or, if they are not, whether they imply the existence of actionable defamatory statements about Plaintiff.[51] This Court must review the statement at issue to determine if the "opinion implies the existence of an undisclosed defamatory factual basis."[52]

### *Parties' Contentions*

Defendants argue that even if Mill Creek were wholly financed by the State of Delaware, that alone does not render it a government actor. Defendants maintain firefighting has not been traditionally and exclusively a government function in Delaware. Finally, regarding government action, Defendants argue the State did not compel or coerce the action taken by Mill Creek in this case. Defendants argue that, by failing to allege sufficient governmental control to establish state action within the complaint, Plaintiff fails to state a claim.

Defendants follow by arguing Plaintiff does not have a property interest in his volunteer position. Finally, on the issue of due process, Defendants argue Plaintiff

---

[49] *Id.*
[50] *Id.* at 1148-1149.
[51] *Id.* at 1153.
[52] *Cousins,* 283 A.3d at 1156 quoting *Ramunno v. Cawley,* 705 A.2d 1029, 1036 (Del. 1998).

11

received sufficient due process employed, if the Court were to find state action and sufficient property interest.

As for defamation, Defendants argue Plaintiff failed to identify a defamatory statement within the Complaint. Further, they argue because Plaintiff admitted making the comment, and acknowledged it as an offensive joke, Plaintiff cannot establish the statements complained of are false. As it relates to the Supreme Court's decision in *Cousins*, Defendants argue the statement is of public concern as it relates to protecting individuals from sexual harassment.

Plaintiff responds by arguing "Mill Creek Fire Company is a non-profit organization that receives financial appropriations from the State of Delaware, New Castle County, and federal grants."[53] To support his position, he cites to "*Masche v. Camden-Wyoming Fire Co.* (2016).[54] Unfortunately, the Court has been unable to locate a judicial decision related to that citation. There is a docket for the *Masche* matter which advises the case was related to a claim under the Fair Labor Standards Act.

Plaintiff also cites to *Walker v. Robbins,* a post-trial district court decision which assessed a claim of racial discrimination.[55] In *Walker,* the District Court determined the fire department was a state actor. Unfortunately, the cited decision

---

[53] Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Due Process, p. 2.
[54] *Id.*
[55] 465 F.Supp. 1023 (D.Del.).

references the Court's prior ruling on the issue germane to this decision but is not the decision itself. The Court has not been able to locate the underlying decision. The cited decision quotes the fire department's charter providing "[t]he City Council shall have general control of the Fire Department and shall enact rules and regulation to govern its conduct."

Factually, Plaintiff contends the Delaware State Fire Commission licenses Mill Creek relative to EMS and EMT functions and handles complaints from the public. During oral argument, Plaintiff advised the State Fire Commission reviewed his documentation but advised they would not address the matter because Mill Creek was an entity of its own. Plaintiff agreed he was a volunteer at a non-profit organization. The membership elects the Board of Directors. Plaintiff concedes the Board has power to make decisions for the entire company. Ultimately, Plaintiff's argument on the point of State control is there must be an authority, outside the entity itself, to which he could address his grievance.

When the Court solicited comment regarding the *Cousins v. Goodier* decision as it relates to the defamation cause of action, Plaintiff responded "[t]he two cases focus on fundamentally different legal issues."[56] Then, Plaintiff engaged in an analysis related to whether the department's conclusion that he engaged in sexual

---

[56] See D.I. 31.

harassment was supported.[57] This is a symptom of the larger problem——Plaintiff wants to press a defamation claim but has not identified the defamatory statement, to whom it was made, or where it was published. Plaintiff conflates his defamation claim with his due process claim—they are separate issues with different legal requirements as outlined above.

## *Analysis*

### *Due Process*

Utilizing the tests outlined in *Dufesnse,* this Court finds Mill Creek's conduct is not governmental action. There was no special act of the legislature creating Mill Creek—it was created by a community group. In this State, the government has not exclusively and traditionally exercised the power of firefighting. Further, there are no allegations the State was involved in the challenged conduct by coercion, a close nexus or joint participation. The inquiry ends here. Given Mr. Germain's self-representation, the Court will continue its analysis for his benefit, whatever it may be worth.

The Court also finds Plaintiff has not demonstrated a property interest in his volunteer position with Mill Creek. Plaintiff has failed to identify anything more

---

[57] *See Id.* "The focus is on whether my conduct was severe or pervasive enough to constitute harassment…"

than a *de minimus* interest in his volunteer position. The law requires more than an abstract need or desire.

Finally, under the established balancing test from *Mathews v. Eldridge*—even with the deference given on a Motion to Dismiss—Plaintiff received sufficient due process. Plaintiff's private interest is in his continued volunteer work with Mill Creek. The Court finds no risk of erroneous deprivation through the procedures, even as Plaintiff has outlined them. Plaintiff was notified of the issue and given an opportunity to respond. In a written response he admitted to "offensive jokes," which expressly violates the policy he cites. The "government" interest of Mill Creek is to ensure a safe and respectful environment for members and the community they serve. Even under the facts as alleged by Plaintiff, he received sufficient due process. Due process does not guarantee a particular result. Indeed, it was Plaintiff who suggested Mill Creek "*skip all the formalities,* as we typically would do with investigations, and take it as it was," but now complains the formal process was not followed.

### Defamation

At the outset of the analysis of this claim, the Court is faced with difficulty; no published defamatory statement made to a third party is identified within the Complaint or its attachments. At oral argument, Plaintiff argued *he* was told by leadership that, because he apologized, he admitted to sexual harassment. That is

not publication. The specifics of the manner and to whom it was published by these Defendants that Plaintiff was a sexual harasser remains unclear. For a defamation claim, Plaintiff must allege facts sufficient to establish a claim these defendants published to third parties. "There is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[58]

For completeness, the Court turns to the question of whether this statement is one of public concern. The determination by the Board that Plaintiff's conduct met the policy definition of sexual harassment is a matter of concern to the community, since Mill Creek is an organization providing services to the public. The next question then, is whether Plaintiff has asserted sufficient facts in his Complaint to establish the statement is provably false. Comparing the policies outlined by Plaintiff and his own admission to making an "offensive joke," the 'statement'[59] is not provably false. Since it is not, the Court must determine if the statement implies the existence of actionable defamatory statements—here we come back to the problem identified by the Court at the outset of this analysis—without the specific language used, the Court has no way to tell its implication. While the Court is to read all well-pleaded allegations in the light most favorable to the Plaintiff, that only

---

[58] *Draper v. Medical Center of Delaware*, 767 A,2d 796 (Del. 2001).
[59] Such as it has been identified as a determination by leadership that Plaintiff's conduct was a violation of the sexual harassment policy.

goes so far. The Court will not accept conclusory allegations that are unsupported by specific facts. There is no allegation of publication, which is required under the law. Therefore, Plaintiff's assertion of defamation fails to state claim upon which relief can be granted.

### Jurisdiction

As noted above, the Complaint does not specify relief sought. At oral argument, Plaintiff advised he seeks an apology and for the truth to be known. Construing this position, Plaintiff appears to seek equitable relief. This Court does not have the power to grant equitable relief.[60] The power to grant requests for equitable remedies when there is no adequate remedy at law rests with Chancery Court.[61]

Wherefore, the Defendants' Motion to Dismiss is GRANTED.

**IT IS SO ORDERED**.

/s/Sonia Augusthy
Judge Sonia Augusthy

---

[60] *See Phillips v. Conley*, 2004 WL 692656 (Del. Super.) *aff'd.* 860 A.2d 811 (Del. 2004).
[61] *See Kraft v. WisdomTree Investments, Inc.*, 145 A.3d 969, 973-4 (Del. Ch. 2016).

17